## Stephen Smith's Estate.  M. H. Stevenson's Appeal.

*Decedent's estate—Executors and administrators—Agreement with executor—Sale of real estate.*

S., a stranger to an estate of a decedent, became interested in it by purchasing certain of the shares of the decedent's devisees.  In order to hasten the relief of the land from the decedent's debts which were a charge upon it, he paid some of the debts himself, and subsequently made a partial settlement with the executor.  About a month after this settlement S. and the executor entered into an agreement by which it was provided that if S. should become the purchaser of the decedent's real estate, the accounts assigned to S. by the executor in the previous settlement, "as well as the accounts against said estate heretofore paid by said S., shall be deducted from the amount of purchase money."  S. purchased the real estate at executor's sale, and the sale was confirmed by the court.  Subsequently the executor petitioned the court to set aside the confirmation of sale because S. had not paid the purchase money.  It appeared that the executor had intermeddled with the real estate, and collected rents for which he had not accounted.  There were also other irregularities in the management of the estate.  Apparently the only debt of the estate was one secured by a mortgage on the real estate.  S. claimed to be the owner by assignment of one half of the mortgage, and the executor and his brother owners of the other half, but their assignment had not been put on record.  S. claimed that the mortgage was paid.  *Held,* (1) that as the executor had mingled all the items of account between himself and S. in the latter's threefold relation of assignee of the heirs, creditor of the estate and purchaser at the sale, and as S. had become a purchaser on the basis of this agreement, the confirmation of the sale should be allowed to stand, but equity required that as a first step, before any payment was demanded from him, it should be shown that there was a balance against him under his agreement with the executor; (2) that the executor should be required to state a full account of all his dealings with the estate, real and personal, and of all outstanding debts, etc.; (3) that the executor owed S., as purchaser of the property, the duty of having the mortgage satisfied, if paid, or, if not, of having the assignment put on record, and the balance due definitely ascertained.

Argued Oct. 20, 1896.  Appeal, No. 147, Oct. T., 1896, by M. H. Stevenson, from decree of O. C. Washington Co., Feb. T., 1893, No. 1, refusing to rescind confirmation of sale of real estate.  Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Decree reversed in part.

Petition to set aside confirmation of sale of real estate.

From the record it appeared that M. H. Stevenson bought

certain of the shares of the devisees of Stephen Smith, deceased. In order to relieve the land of the lien of debts he paid some of the decedent's debts. On May 8, 1895, the executor, George M. Tenan, assigned to M. H. Stevenson certain accounts owing to the estate. Subsequently the executor applied for leave to sell a farm known as the home farm for the payment of debts. On July 30, 1895, the executor and Stevenson entered into the following agreement:

"And now, July 30, 1895, it is agreed by the undersigned as follows : That if, at the sale of the Home Farm, on August 9th next, the said Stevenson shall become the purchaser of the whole or a part of said farm, the amount of the above accounts by me assigned to said Stevenson May 8, '95, as well as the accts. against said estate heretofore paid by said Stevenson, shall be deducted from the amount of the purchase money, and that, upon said Stevenson's receipting the said accts. and assigning them over to said Tenan, along with the vouchers, etc., and the payment in cash or mt'g of the balance of the purchase money (if any remains due), that thereupon the said Stevenson shall be entitled to a deed."

On May 15, 1895, the following agreement in writing was executed.

### Exhibit D.

"Memorandum as to manner in which the following judgment, mortgage and real estate sale is to be amicably settled and adjusted.

Mtg. { Stephen Smith to Mut. Life Ins. Co. } Date, 18 Oct. '76 Mortg. Book 7 page 122.

Robert Scott to Geo. M. Tenan, Dr.

By 73 acres land at $45 per acre   .   .   .   $3,300
                        Cr.
By ½ of Mtg. June 23, '94 .     .     $1,700
By int. to April 1, 1895 (9 mo. 9 da.)     79.05
By accrued int. paid June 23, '94   .     57.50
By McElroy judg. No. 164 }
     Feb. Term, 1892,     }          817.50—$2,654.05
     Balance due by Scott   .   .   .     $ 645.95

Amt. pd. June 23, '94, by J. B. Tenan
   and G. M. Tenan for ½ Mtg.   .   .   .   1,700.00
Int. to May 9th, 1895   .   .   .   .      90.10
Accrued interest paid June 23, '94   .      57.50

                                            1,847.60

                 Cr.

By money in hands of G. M. Tenan
   to apply to this ½ Mtg.            $1,800
   Less amount due by Scott        ·   645.95—$1,154.05
Balance due on entire Mtg. with int. from May 9, '85   $  693.55

And now, May 15, 1895, it is agreed by and between the undersigned that the above matters in dispute be settled and adjusted according to the calculation above made, and that upon the payment or legal tender of the above balance by M. H. Stevenson or his attorney at Washington, Pa., all above securities shall be deemed satisfied and shall be so marked of record in the proper offices.

If it shall appear that there has been any mistake made in the calculation of interest, the amount thereof shall be added to or deducted from above balance of $693.55.

Witness the hands and seals of the above parties in interest the day and year aforesaid.    [May 15th, 1895.]

        GEO. M. TENAN, Executor of Stephen Smith,  [Seal]
Attest:

                GEO. M. TENAN & J. B. TENAN, partners,  [Seal]
                M. H. STEVENSON,              [Seal]

I hereby warrant that the amounts paid by Robert Scott and by myself and J. B. Tenan for the mortgage above mentioned are correct and true, and also that the amount to be credited by me on the ½ int. of myself and said J. B. Tenan is $1,154.05 as above computed.

                      GEO. M. TENAN,  [Seal] "

The sale of the real estate was made to Stevenson, and duly confirmed. Subsequently the executor petitioned for a citation to show cause why confirmation should not be set aside, alleging that Stevenson had failed to pay the purchase money in compliance with the terms of the sale. McILVAINE, P. J., filed the following opinion:

Under an order of sale issued out of this court, Geo. M. Tenan, executor of the will of Stephen Smith, deceased, sold to M. H. Stevenson, Esq., the respondent, a tract of land in Hanover township, for the sum of $5,401.16. The order of sale was granted for the reason that the personal estate of the decedent was insufficient to pay his debts, and was returnable to the August term, 1895. On August 19, 1895, the sale was reported to the court, and on September 17, 1895, was duly confirmed. The terms of the sale were : " one third of the purchase money to be paid on the confirmation of the sale by the court; and the balance of the purchase money to be paid in two equal annual instalments thereafter, with interest on each instalment from confirmation of sale." On January 6, 1896, the executor presented his petition, setting forth that the purchaser, M. H. Stevenson, had failed to comply with the terms of sale, in that he refused to pay the one third of the purchase money that by the terms of sale was due and payable on the day of the confirmation of the sale, to wit, September 17, 1895.

The sole prayer of the petition is that a " citation issue commanding the said M. H. Stevenson to show cause why the confirmation of the sale should not be lifted and the real estate ordered resold at his expense." An answer was filed in which it is claimed that the first instalment of the purchase money, and more, has been virtually paid to the executor, and that security has been offered for what remains unpaid of the second and third payments. To this answer a replication was filed and testimony taken by an examiner appointed by the court.

Where a purchaser at an orphans' court sale, duly confirmed, fails to comply with the conditions of sale, there are three remedies that can be resorted to by the person appointed to execute the order of the court; (1) an action at law in the common pleas for the purchase money ; (2) a proceeding in the orphans' court for specific performance by the purchaser, and (3) a proceeding in the orphans' court to set aside the confirmation of the sale of the property. The last of these remedies has been resorted to in this case.

As all orphans' court sales of real estate to pay the debts of a decedent are, in a sense, made by the court, and as confirmation is always made on the implied condition that the purchase money will be paid according to the terms of sale, a decree of confirma-

tion can be set aside or lifted, notwithstanding the term at which the decree was made, as in this case, has passed.    But as this remedy may necessitate not only a resale of the property, but a suit at law to recover the deficiency, if it sells for a less price at the second sale, it is a question whether it should be resorted to if either of the other remedies can be made efficacious.    If the sale is a good one, and part of the purchase money has been paid, specific performance is the most desirable remedy.    The facts as they appear from the pleadings and testimony convince us that the interests of all parties can be better subserved in this case by a decree of specific performance than by a decree lifting the confirmation of the sale already made, and ordering a resale of the property at the expense of the respondent.    The executor has had difficulty in finding a purchaser, the order of sale originally granted having been renewed three times ; the price obtained at the sale which was finally made and confirmed is an adequate one, and better, perhaps, than could be obtained at a resale ; the respondent is in possession, and does not question the regularity of the sale, but in his answer prays that the executor may be required to execute and deliver to him a deed for the land sold to him, and $1,212.81 of the purchase money has been, in effect, paid to the executor.    Under these facts we do not think that the confirmation of this sale should be lifted and the expense of a resale incurred.    But this proceeding, although to set aside the confirmation of the sale reported, can be made, —by amending or adding a second prayer to the petition,—a proceeding " for specific performance of that sale."    Indeed, the court having obtained jurisdiction of the subject-matter, all the necessary parties can treat the prayer of the petition as amended, as the respondent substantially prays for specific performance, and make any decree in the premises required by the law and equities of the case : Postlethwaite's Appeal, 68 Pa. 480.

A number of things referred to in the testimony submitted and set out in the respondent's answer cannot be considered in this proceeding.    If, as alleged, the executor has mismanaged the estate, if he has rented real estate of the testator without authority of law, if he has failed to perform his contract to settle this estate out of court, and in a way not pointed out by the law, to the damage of the respondent, he has his remedy, but we do not see how the court, in this proceeding, can take cognizance of these things.

The original purpose of the various contracts entered into by the executor and respondent, and made part of the answer, was to have the estate settled at less expense than would be incurred by following the course prescribed by the act of assembly; and where all parties are sui juris, and can agree, and all join, there is no legal objection to pursuing this course, but these short cuts to save expense not infrequently prove more expensive than to follow the procedure established by law. If the plan of settlement goes through, or is consummated, it is all right, as no one has a standing to object, but if the plan falls to pieces before the consummation of the desired end, then there is trouble. And if the court is appealed to, it is better for it to go back to the regular mode of closing up the estate than to try to enforce agreements that were made to save expense. The order of sale issued by the court to the executor, under the rules of court, provided for a sale on the usual terms; the sale was made on these terms, was so reported and confirmed. If the respondent had come into court any time before August 9, 1895, the date of the sale, and tendered sufficient money to pay the debts, or showed that they had been paid by him, we might have revoked the order to sell, or allowed a private sale to him on special terms, such as set out in exhibit "D," but this was not done. Or, if after the public sale was made, the return of sale had set out this collateral agreement of July 30, 1895, the court might have moulded a decree of confirmation accordingly. But all that we can now do in this proceeding is to see that the respondent is credited with the actual payments of money that went to pay debts that the purchase money would have been applied to if it had been paid. This amount we find to be $1,212.81. In our opinion the testimony shows it was the intention of all parties interested to sell this land discharged of the lien of the mortgage owned by Robert Scott and J. B. Tenan, and, as we understand, this is not disputed by the executor or the holders of the mortgage. They simply deny that the mortgage was to be satisfied until fully paid. How much is due upon it to be paid out of the purchase money of this sale can be ascertained by an auditor if the amount is disputed.

If the parties cannot, after what the court has said, settle this dispute between themselves amicably, we hold that the proper way to close up the settlement of this estate is as follows:

(1) The respondent to pay the balance of the first instalment of purchase money, after deducting $1,212.81, and give bond and mortgage to secure the payment of the 2d and 3d instalments; (2) the executor to settle his account as soon as this money is received, and the respondent to file exceptions thereto if not satisfactory; (3) the appointment of an auditor to pass upon exceptions filed, to ascertain creditors and the amount of their claims and to make distribution; (4) so much of the instalments of the purchase money secured by the bond and mortgage as will go to the respondent as a creditor and distributee not to be collected in money, but to be paid or satisfied by the respondent's receipt.

And now, July 28, 1896, the citation to show cause why the confirmation of real estate to respondent, M. H. Stevenson, hereinbefore made, should not be lifted and the property resold, is dismissed; and upon the pleadings and testimony submitted, —the court having complete jurisdiction of the subject-matter and all the parties in interest,—it is ordered, adjudged and decreed as follows, to wit: (1) that the respondent, M. H. Stevenson, have credit upon the first instalment of the purchase money due under the terms of sale as confirmed, for the sum of $802.96 paid to the executor in cash, and for the sum of $409.85 paid to W. S. Lee, J. B. Tenan, B. F. McClure & Co., Drs. G. S. Graham and Buzzard and O. P. Shield, creditors of the Stephen Smith estate; (2) that the respondent, M. H. Stevenson, pay to the petitioner, Geo. M. Tenan, executor, the balance of said first instalment, to wit: $587.55, with interest from September 17, 1895, and give bond and mortgage to secure the payment of the 2d and 3d instalments of the purchase money; (3) that Geo. M. Tenan, executor, upon payment of the balance of the first instalment of purchase money, and the delivery to him of a bond and mortgage to secure the 2d and 3d instalments, execute and deliver to M. H. Stevenson a deed for the property sold to him; (4) that the said Geo. M. Tenan exhibit and file in the register's office his account to the next term, to the end that an auditor may be appointed to ascertain creditors and the claims against said estate of Stephen Smith, and make distribution; (5) that the collection of the 2d and 3d instalment of the purchase money, so far as the amount if collected would go to the respondent, M. H. Stevenson, as a creditor or distributee

of said estate, is restrained, his claim as creditor and distributee to be allowed when ascertained by the auditor as a credit on said 2d and 3d instalment of purchase money; (6) the costs of this proceeding to be paid out of the funds of the estate by the petitioner.

*Error assigned* among others was decree of the court.

*M. H. Stevenson*, with him *J. C. Ewing*, for appellant.—The executor was bound by his contract with appellant: Kauffelt v. Leber, 9 W. & S. 93; Grier & Warner's App., 25 Pa. 352; Bloodgood's Est., 8 Pa. C. C. Rep. 545; Hinkley v. Walters, 8 Watts, 263; Mervine v. Greble, 2 Par. Rep. 272; 2 Parsons on Cont. 737.

The only cases where such a set-off has not been allowed is where the estate is insolvent, and there, because by allowing the set-off, one creditor would get his claim in full, and the rest only a pro rata: Fritz v. Thomas, 1 Wh. 66; Wolfersberger v. Bucher, 10 S. & R. 13; Singerly v. Swain's Admrs., 33 Pa. 102; James' App., 89 Pa. 57; Stephens v. Cottrell, 99 Pa. 188.

But even if the estate turns out to be insolvent, the money cannot be recovered back if payment has been made voluntarily. The court, almost a year after the date of the contract and sale of the farm, when it was admittedly impossible for respondent to be put in statu quo on account of improvements made, allowed the executor to repudiate a payment voluntarily and designedly made, and made a decree that he recover it back. This, under the authorities, was clearly error: Neely v. Bair's Exr., 157 Pa. 417; Montgomery's App., 92 Pa. 202; Hulme v. Miller, 126 Pa. 281.

" Terms of sale," even when admittedly changed by the parties, must give way to substantial rights and equities: Crosson's App., 125 Pa. 381.

Notwithstanding the maxim of caveat emptor is applicable to such sales, it is still the duty of those who conduct them to act in good faith, and as far as possible avoid any misdescription or misrepresentation as to the quality or quantity of the property offered for sale: Schug's App., 14 W. N. C. 50; Johnson's App., 114 Pa. 132.

It is now established that in all cases where an act is done,

or a statement made by a party, the truth or efficiency of which it would be a fraud to controvert or impair, the character of an estoppel shall be given to what would otherwise be mere matter of evidence: Stephens v. Baird, 9 Cow. 274; Dewey v. Field, 4 Met. 381; Cong. v. Williams, 9 Wend. 147; Com. v. Moetz, 10 Pa. 530; Pickhard v. Sears, 6 A. & E. 469; Dezell v. Odell, 3 Hill, 219; Bidwell v. Pittsburgh, 85 Pa. 417; Beaupland v. McKean, 28 Pa. 124; Lawrence v. Luhr, 65 Pa. 236; Eldred v. Hazlett's Ex., 33 Pa. 316; Miranville v. Silverthorn, 48 Pa. 147.

Orphans' court sales must be so conducted as not to mislead or entrap bidders: Schug's App., 14 W. N. C. 50; Crosson's App., 125 Pa. 381; De Haven's App., 106 Pa. 617; Demmy's App., 43 Pa. 170.

*H. M. Dougan,* for appellee.—Where a court of equity has possession of a case, and has jurisdiction of the subject-matter, it may proceed to make a proper decree to do justice between the parties: Danzeisen's App., 73 Pa. 65; Wilhelm's App., 79 Pa. 120; Delaware Co.'s App., 119 Pa. 170; Postlethwaite's App., 68 Pa. 480; Kittera's Est., 17 Pa. 423.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1897:

This case illustrates very forcibly the dangers of short cuts out of the regular course of administration of estates, which as the learned judge below well remarked " not infrequently prove more expensive than to follow the procedure established by law." He was clearly right in getting the estate back to the orderly and regular course of administration, and therefore in refusing to rescind the confirmation of the sale. But the decree was made unduly burdensome to the appellant by insistence on the formal terms of sale, and failure to recognize fully the agreement between appellant and the executor upon the basis of which the former made the purchase.

The situation was anomalous. The decedent died in 1892, and at the end of four years the estate was not only unsettled, but the executor did not seem to know, certainly has not shown, what its real condition was. On the contrary his management exhibits great irregularity. He has intermeddled with the real estate and collected rents, etc., from it, for which he has

not accounted. The charge that he permitted debts of the estate bearing interest to run on while available assets to pay them remained, without effort to collect and apply them, appears to be backed by substantial evidence; and his apparent settlement with Scott, the purchaser of the seventy-three acre farm, as shown in the memorandum of May 15, 1895 (called exhibit C), allows Scott interest on his half of the mortgage, but charges him no interest on the unpaid purchase money. All these matters may be susceptible of full and satisfactory explanation, but it should be given as the first step toward the proper extrication of the estate out of its present disorderly condition.

Prior to the sale in August, 1895, the appellant had become interested in the estate by purchase of the shares of the heirs, and in order to hasten the relief of the land from the decedent's debts which were a charge upon it, he had paid some of them himself, and had made a partial settlement with the executor, as shown by the memorandum of May 8, 1895 (exhibit B). In this situation of affairs the sale of the home farm came on to be made, and on July 30, 1895, appellant and the executor entered into an agreement which is the substantial basis on which this controversy turns. By it, if appellant should become the purchaser, the accounts assigned to him by the executor in the memorandum of May 8, 1895, "as well as the accounts against said estate heretofore paid by said Stevenson, shall be deducted from the amount of purchase money," etc. The learned judge below was of opinion that this was a private arrangement between the executor and the purchaser, which the court could not recognize after the confirmation of the sale upon its expressed terms, and also that the rents or other moneys collected by the executor from the real estate could not be considered in this proceeding. In the regular and orderly course of administration he would undoubtedly be right, but this proceeding was not in the regular and orderly course. Appellant as assignee of the heirs had a claim against the executor for rents, etc. and he was also a creditor of the estate by subrogation to the claims against it, which he had paid. If the executor had settled with appellant before the sale, there could be no question of his right to do so, although the claims were partly against him as an individual and partly in his capacity as executor. But the parties chose to postpone the settlement

until after the sale, and then to settle the balance on whichever side it should appear. If fairly and honestly done there was nothing unlawful in this, and it does not appear that anyone is injured by it. It is not shown that there are any debts of the estate except possibly a balance on the mortgage which will be referred to later, nor that if there are any such debts that the executor has not funds in his hands to pay them. There is no one before the court complaining either as heir, devisee, distributee or creditor. So far as appears the only matters to be adjusted are the items of the account between the executor and the appellant in his threefold relation of assignee of the heirs, creditor of the estate, and purchaser at the sale. The executor mingled all these items in the agreement of July 30, 1895, and on the basis of that agreement appellant became the purchaser. Equity requires that as a first step, before any payment is demanded from him, it should be shown that there is a balance on that account against him. The executor should be required to state a full account of all his dealings with the estate, real and personal, and of all outstanding debts, etc. The court will then have before it the information necessary to make a final settlement of the whole matter.

One matter left in especially unsatisfactory shape is the mortgage to the New York Mutual Life Insurance Co. Scott claims to be the owner by assignment of one half, and the executor and his brother owners of the other half, but the assignment has not been put on record, nor so far as appears has it even been produced on call, and on proper occasion. This appears not only from the testimony of appellant, but also of Mr. McCracken who represented parties willing to make a loan on the property if the title could be relieved from the lien of this mortgage. It is the duty of the executor before calling on the appellant for payment of the purchase money to clear up the apparent mystery surrounding this mortgage. Appellant claims that the present owners are estopped by their declaration at the sale that the mortgage was paid and would be satisfied, though we have not found any adequate explanation, if this was so, why appellant agreed to recognize the mortgage, as an existing incumbrance, in the memorandum of May 15, 1895. But in any case the executor owes the appellant, as purchaser of the property, the duty of having the mortgage satisfied, if paid, or if not, of

having the assignments put of record, and the balance due definitely ascertained.

So much of the decree as refuses to rescind the confirmation of the sale is affirmed. But the rest of the decree is reversed, and it is ordered that no payment be required from appellant until it shall appear by the executor's account, made up in accordance with this opinion, that a balance is due by appellant. Costs of this appeal to be paid by the executor, appellee, but without prejudice to his right to be repaid out of the moneys of the estate, if upon final hearing and decree, such repayment shall appear to be just and equitable.